# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | ) Case No. 17-22147-GLT |
| | ) |
| Ronald S. Jones, | ) Chapter 11 |
| | ) |
| Debtor. | ) Document No. |

---

## SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
## DATED JUNE 30, 2022

---

*Court Mark-up*
*8/25/2022*

Donald R. Calaiaro, Esquire
PA ID #27538
CALAIARO VALENCIK
938 Penn Avenue, Suite 501
Pittsburgh, PA 15222-3708
(412) 232-0930

**DATED:** June 30, 2022

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | ) Case No. 17-22147-GLT |
| | ) |
| Ronald S. Jones, | ) Chapter 11 |
| | ) |
| **Debtor.** | ) Document No. |

### SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
### DATED JUNE 30, 2022

Ronald S. Jones, Debtor-in-Possession, propose the following Second Amended Chapter 11 Plan of Reorganization ("Plan") pursuant to §1121(b) and (c) of the Bankruptcy Code ("Code"), 11 U.S.C. §1121(b) and (d).

### ARTICLE 1 - DEFINITIONS

For purposes of this Plan, except as otherwise expressly provided herein or unless the context otherwise requires, the following capitalized terms shall have the meaning set forth below:

*1.1* ***Adequate Protection Payments*** shall mean the payments voluntarily made between the filing date and confirmation date by Ronald S. Jones, in respect to secured claims.

*1.2* ***Administrative Claims*** shall mean the costs and expenses of administration of this Chapter 11 case allowed under § 503 (b) and entitled to priority under § 507 (a) (1) of the Bankruptcy Code.

*1.3* ***Allowed*** shall mean, with respect to a Claim, (a) any Claim that has been listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no contrary proof of claim or interest has been filed, (b) any

2

*Freedom Mortgage has asserted a pre-confirmation arrearage of $3,558,30. The Debtor disputes the existence of any arrearages. These arrears, to the extent they are allowed, will be paid over the 36 months following confirmation.*

3.3    **Class 3** shall consist of the secured claim of **Citzens Bank**. Citizens Bank holds the Home Equity Line of Credit/ mortgage on 3307 Waterford Drive, Pittsburgh, PA 15238. This mortgage was originally dated July 25, 2016 and was in the face amount of $18,000.00. This mortgage was recorded in the Recorder's Office of Allegheny County, Pennsylvania in Book 46864, Page 576. Petition Date, the Debtor listed Citizens Bank as having a total claim in the amount of $17,545.00. Wells Fargo did not file a timely Proof of Claim. The Debtor has not made any post petition payments during the chapter 7 case; and the mortgage is in arrears. *THIS PLAN SEEKS TO MODIFY THE MORTGAGE OF CITIZENS BANK.*

3.4    **Class 4** shall consist of the **Priority Tax Claims** of various governmental units for the amounts which were due as of May 22, 2017, as follows:

**Priority Tax Claims**

| Name of Creditor | Class | Amount Owed | Status |
|---|---|---|---|
| United States of America, Internal Revenue Service POC #1 | 4 | $33,226.25 | Estimated/Disputed |

Participation in this class shall be limited to taxes which are defined as priority claims in 11 U.S.C. §§ 507(a)(7)(A), (C) and shall include principal and interest through May 22, 2017. The priority claims will participate in this class ONLY to the extent the claim has priority status. Any unsecured portion, the penalty portion of this claim, and or any non-priority claim will be paid as a Class 6 General Unsecured claim.

11

**3.5**  **Class 5** shall consist of shall consist of all other **General Unsecured Creditors** who had an allowed claims against the Debtor as of **May 22, 2017**. This class is made up of General Unsecured Claims in the approximate amount of $195.571.14. Some of the Creditors' claims in this class are disputed. Participation in this class shall be limited to the amount due as of May 22, 2017 and who have filed to participate in class 5. The claims in this class shall not include any late charges, interest or attorney's fees after the Petition Date. This treatment anticipates the general order denying the discharge will not be modified. The Disclosure statement identifies those unsecured creditors would receive no distribution in a chapter 7 case. Terri Imbarlina Patak filed an adversary action at Adv. Pro No. 17-02222-GLT ("Adversary") to determine whether Ron Jones' debts were subject to discharge under Chapter 7. The Chapter 7 Trustee filed a separate adversary to recover fraudulently-conveyed property. The adversary proceedings culminated in (1) a default judgment in favor of the Chapter 7 Trustee and (2) a determination in favor that the debt to Terri Imbarlina Patak was not subject to a discharge. The Adversary also culminated in a determination that Debtor would be denied a general discharge. After the judgments were entered in the Adversary Proceedings, ⎯⎯⎯ ?

This Plan and its treatment recognizes the non-dischargeable aspect of the Patak claim and that all creditors are protected by an order of this Court that the Debtor is not entitled to a discharge. Factoring the non-collectability of any judgment, this Plan proposes the use of exempt social security and pension income to make payments to creditors.

This Plan creates two subgroups of Class 5 creditors. **Subgroup A** are containing

12

all General Unsecured Creditors who do not affirmatively elect to be treated in **Subgroup B**. By default, all General Unsecured Creditors, unless elected otherwise, are in **Subgroup A.** Subgroup A creditors will be treated as follows:

    i.    Subgroup A will be paid up to $ 15,000.00[1] over five years without interest. This class will not be discharged from any amount which was not paid under the plan.

    ii.    At the conclusion of the Plan Payments, the creditors in this class may enforce any collection rights they have as to the unpaid amounts they are due.

**Subgroup B** shall contain all General Unsecured Creditors who affirmatively elect to accept a discharge of the unpaid portions of their claims under the Plan. Creditors in Subgroup B will be treated as follows:

    i.    If they accept this plan treatment, the Debtor will pay the Subgroup B creditors a minimum of $ 85,000.00[2] over 10 years without interest or $708.33 a month for 120 months.

    ii.    These Subgroup B creditors must place on their ballot, ~~they~~ *their* acceptance to participate in Subgroup B and accept a discharge.

    iii.    The Debtor is securing the payment to Subgroup B by a mortgage in the amount of $ 85,000.00.

---

[1] The Dividend to this class [5(A) sub] is not possible to project until the ballots accepting class 5 [(B)] treatment have been submitted. It is possible that all creditors will elect to be members of class 5 [(B)] and no creditors will populate class 6 [5(A)]. Depending on the outcome of the ballots, any unused portion of class 6 [5(A)] dividend will be added the amounts paid to class 5 [(B)].

[2] It is possible that all creditors will elect to be members of class 5 [(B)] and no creditors will populate class 6 [5(A)]. Depending on the outcome of the ballots, any unused portion of class 6 [(B)] dividend will be added the amounts paid to class 5 [5(A)], and may increase the amounts paid to class 5 [5(A)].

13

    iv.  At the completion of payments, Creditors in Subgroup B will accept a contractual discharge of any unpaid portion of their claims.

  **3.6**  <u>**Robleto Kuruce, PLLC**</u>. Robleto Kuruce, PLLC has filed Proof of Claim #13 ("<u>POC 13</u>") on February 14, 2022. The Proof of Claim #13 ("<u>POC 13</u>"), asserted claim in the amount of $14,755.16 for attorney fees alleged accrued during the period of March 4, 2019 through June 4, 2019.[3] POC 13 was later amended asserting that the claim was entitled to priority under Section 507(a)(2) of the Bankruptcy Code. The Debtor filed an objection to that claim at Doc. No. 198. The Objection to that claim was resolved. The Debtor believes that Robleto Kuruce, PLLC holds a valid; but disputed claim but it does it hold a valid post-petition, pre-conversion claim for legal fees from the Debtor. After considering the costs of litigation and the possibility that the costs of defense and the possible impact costs of Defense and /or the entry of a judgment will have upon this case, the Debtor has decided that it is in everyone's best interest to resolve this disputed claim.

  The Debtor will pay Robleto Kuruce, PLLC the sum of $10,000.00.

    i.  This sum will be paid in 60 equal, monthly installments of $166.66.

    ii.  Upon payment of all amounts due under this subsection, Robleto Kuruce, PLLC shall waive and agree to discharge any remaining amount of its claim against the Debtor or Grace Betancourt Jones, *provided, however,* that if the Debtor fails to make all payments provided for under this subsection of the Plan, Robleto Kuruce,

---

[3] These are the dates set forth in the leftmost column of the attachment to POC 13. However, it is unclear from the one-page attachment what work was allegedly done or when such work was done/completed.

(B)    Section 506 Actions against any secured creditor who had an allowed Secured Claim;

(C)    Objection to the Claims of Roberto Kuruce, PLLC (filed at Doc. No. 198);

(D)    Any Chapter 5 actions;

(E)    Motions to strike claims and actions to determine the amount due to any creditor; and

(F)    The Reorganized Debtor shall have the right to bring any action to enforce this Plan at any time. If the Debtor is successful in an action to enforce this plan, the Debtor shall be entitled to actual attorney's fees and costs incurred in the prosecution of any such action/motion.

The Post-Confirmation Debtor shall be entitled to all defenses, rights and counterclaims against any Creditor in establishing the allowed claims, arrearages, or any amount due.

**5.6    Miscellaneous Provisions.**

**5.6.1** All causes of action, all avoiding powers, all choses in action of any type which were the property of the Debtor at the time of the commencement of this case shall remain the property of the Debtor under this Plan.

**5.6.2** The Debtor shall have the right to bring any action and to recover damages any remedies under 11 U.S.C. § 524(i) prior to the entry of their discharge, if any creditor fails to apply payments as required by this Plan.

**5.6.3** Upon the conversion to Chapter 11, Trustee Robert Shearer will

17

cease his role as the Chapter 7 Trustee. Thereafter, the US Trustee may appoint a staff attorney to monitor this case or the case will be monitored in accordance with the normal operations and guidelines of the US Trustee.

**5.6.4** All Orders entered in the Bankruptcy Case and All Orders entered in Adversary No. 17-2222 GLT and Adversary No. 19-2096 GLT, including, but not limited to, the denial of the discharge of claims and this Court's sanctions in the mediation process, shall remain in full force and effect despite the conversion. ~~These Orders shall remain in effect until the Debtor is granted a discharge upon the completion of this Chapter 11 Case as to Class 5(B). The default Order at~~ Adv. Pro No. 17-02222-GLT ~~("Adversary") which determined that Ronald Jones would be denied a general discharge will be set aside and the Debtor will be granted a discharge upon, and only after, the completion of payments under this Plan as to Class 5(B) only.~~

Notwithstanding any Order previously entered in this bankruptcy case or in Chapter 11 Case as to Class 5(B), Adv. Pro No. 17-02222-GLT or 19-2096-GLT, upon the completion of payments to Class 5(B), the Debtor shall be entitled to a consensual discharge of any unpaid portion of the claims held by creditors that voluntarily elected Class 5(B) treatment.

## ARTICLE 6 - PROVISIONS FOR CLAIMS AND EQUITY SECURITY INTERESTS GENERALLY

**6.1** At the time the Confirmation Order becomes a Final Order, the Debtor and the Reorganized Debtor shall be deemed to have the benefits and effects of Code Section 1141(a) and (b).

**6.2** The Reorganized Debtor shall be deemed to have the benefits of Code Section 1141(c) and the Debtor and the Reorganized Debtor shall be discharged upon the completion of Plan Payments and further Order of Court upon the granting of a discharge order pursuant to and released pursuant to Code Section 1141(d) (1) (A) [discharge of debts] and the rights of Classes 5 and 6 shall be terminated except as provided for in the Plan and as provided by Code Section 1141(d).

18

treated as follows:

    i.    Subgroup A will be paid up to $ 15,000.00[4] over five years without interest. This class will not be discharged from any amount which was not paid under the plan.

    ii.    At the conclusion of the Plan Payments, the creditors in this class may enforce any collection rights they have as to the unpaid amounts they are due.

**Subgroup B** shall contain all General Unsecured Creditors who affirmatively elect to accept a discharge of the unpaid portions of their claims under the Plan. Creditors in Subgroup B will be treated as follows:

    i. If they accept this plan treatment, the Debtor will pay the Subgroup B creditors a minimum of $ 85,000.00[5] over 10 years without interest or $708.33 a month for 120 months.

    ii.    These Subgroup B creditors must place on their ballot, they acceptance to participate in Subgroup B and accept a discharge.

    iii.    The Debtor is securing the payment to Subgroup B by a mortgage in the amount of $ 85,000.00.

    iv.    At the completion of payments, Creditors in Subgroup B will accept a contractual discharge of any unpaid portion of their claims.

---

[4] The Dividend to this class is not possible to project until the ballots accepting class 5 treatment have been submitted. It is possible that all creditors will elect to be members of class 5 and no creditors will populate class 6. Depending on the outcome of the ballots, any unused portion of class 6 dividend will be added the amounts paid to class 5.

[5] It is possible that all creditors will elect to be members of class 5 and no creditors will populate class 6. Depending on the outcome of the ballots, any unused portion of class 6 dividend will be added the amounts paid to class 5 and may increase the amounts paid to class 5.

*[Handwritten annotations throughout margins: "5(A)", "(B)", "(B)", "5(A)", "(B)", "5(A)", "(B)", "5(A)", "5(A)"]*

v. Sam Grego will be designated as the nominee for this mortgage.

vi. Upon payment of this $85,000.00, Sam Grego will promptly discharge and satisfy the mortgage. ~~Class 5(B)~~

**Remedies Upon Default** There will be a modified default provision. If there is an arrearage of more than 30 days, the Creditor will issue a default notice to Ronald Jones by regular mail and email to <u>ronaldsjones3307@gmail.com</u> and <u>Dcalaiaro@c-vlaw.com</u>. Thereafter, the Joneses' will have 15 days to cure the default from the date of the notice. If the default is not cured, a material default has occurred.

If a material default occurs, the Nominee, Sam Grego can commence a foreclosure *action* but the Joneses' may still cure at any time allowed by law. After the material default, the interest rate permanently increases to 6% regardless of any cure.

Upon the occurrence of any material default, Sam Grego shall be entitled to collect all post-default attorney's fees and costs. *For the avoidance of doubt, Sam Grego shall act on behalf of all creditors in Class 5(B).*

If the Jones cure any material default, a condition of the cure is that he must to pay all post-default attorney's fees and costs.

**7.5.1 Prepayment Penalty** There shall be no prepayment penalty. The Debtor may prepay this obligation in 5(A) or 5(B) at any time.

**7.5.3 Voting as one Class.** The Creditors in class 5 shall vote as one class.

**7.5.4 State Court Action.** Upon the completion of all payments under the Plan, and if Terri Imbarlina Patak participates in Subgroup B, Terri Imbarlina Patak will settle, discontinue and satisfy the judgment(s) against the Debtor and/or Grace

Betancourt Jones. Should Debtor default, this portion shall also be non-dischargeable as to Ronald Jones. If Terri Imbarlina Patak does not participate in Subgroup B, the Debtor may file an action seeking the protections of 11 U.S.C. § 522(f) prior to the entry of a final decree.

**7.5.5 Counsel Fees**  Counsel to Terri Imbarlina Patak and Special Counsel to the chapter 7 Trustee may be entitled to counsel fees. As part of this Plan, her counsel fees will be paid by Terri Imbarlina Patak and she waives any additional claim against the Debtor or his spouse.

**7.6    Robleto Kuruce, PLLC**. Robleto Kuruce, PLLC has filed Proof of Claim #13 ("POC 13") on February 14, 2022. The Proof of Claim #13 ("POC 13"), asserted claim in the amount of $14,755.16 for attorney fees alleged accrued during the period of March 4, 2019 through June 4, 2019.[6] POC 13 was later amended asserting that the claim was entitled to priority under Section 507(a)(2) of the Bankruptcy Code. The Debtor filed an objection to that claim at Doc. No. 198. The Objection to that claim was resolved. The Debtor believes that Robleto Kuruce, PLLC holds a valid; but disputed claim but it does hold a valid post-petition, pre-conversion claim for fees from the Debtor. After considering the costs of litigation and the possibility that the costs of defense and the possible impact costs of Defense and /or the entry of a judgment will have upon this case, The Debtor has decided that it is in everyone's best interest to resolve this disputed claim.

**7.6.1 Treatment** The Debtor will pay Robleto Kuruce, PLLC the sum of $

---

[6]    These are the dates set forth in the leftmost column of the attachment to POC 13. However, it is unclear from the one-page attachment what work was allegedly done or when such work was done/completed.

27

10,000.00. The first payment shall be made within 30 days after the confirmation of the Plan and each month thereafter until the 60 payments have been made.

    a.    this sum will be paid in 60 equal installments of $166.66.

    b.    Upon Completion of the payments of the $10,000.00, Robleto Kuruce, PLLC will waive and agree to discharge any remaining claim they have against the Debtor or Grace Betancourt- Jones.

    c.    This Plan treatment will not prejudice the rights of either the Debtor to assert this rights/ claims, in the event of a default.

    d.    In the event of a material default, Robleto Kuruce, PLLC my assert its claim.

    e.    The Debtor reserves its defenses if there is a material default.

    f.    The Debtor agrees and stipulates to a tolling of any statute of limitations for the period(s) the Debtor make his payments under the plan. the Tolling of any statute of limitations will not accrue any time until 30 days after the declaration of a material default.

    g.    Robleto Kuruce, PLLC will agree to forebear from the enforcement of any of its claims against Grace Betancourt-Jones while the Debtor make his payments under the plan.

    **7.6.2 Remedies Upon Default** There will be a modified default provision. If there is an arrearage of more than 30 days, the Creditor will issue a default notice to Ronald Jones by regular mail and email to ronaldsjones3307@gmail.com and