**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE:** | ) **Case No.** 17-22147-GLT |
| | ) |
| Ronald S. Jones, | ) **Chapter** 11 |
| | ) |
| **Debtor.** | ) **Document No.** |

_____

**SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
DATED JUNE 30, 2022**

_____

**Donald R. Calaiaro, Esquire
PA ID #27538
CALAIARO VALENCIK
938 Penn Avenue, Suite 501
Pittsburgh, PA 15222-3708
(412) 232-0930**

**DATED:** June 30, 2022

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | ) **Case No.** 17-22147-GLT |
| | ) |
| Ronald S. Jones, | ) **Chapter** 11 |
| | ) |
| **Debtor.** | ) **Document No.** |

**SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
**DATED JUNE 30, 2022**

Ronald S. Jones, Debtor-in-Possession, propose the following Second Amended Chapter 11 Plan of Reorganization ("Plan") pursuant to §1121(b) and (c) of the Bankruptcy Code ("Code"), 11 U.S.C. §1121(b) and (d).

## ARTICLE 1 - DEFINITIONS

For purposes of this Plan, except as otherwise expressly provided herein or unless the context otherwise requires, the following capitalized terms shall have the meaning set forth below:

*1.1*    ***Adequate Protection Payments*** shall mean the payments voluntarily made between the filing date and confirmation date by Ronald S. Jones, withrespect to secured claims.

*1.2*    ***Administrative Claims*** shall mean the costs and expenses of administration of this Chapter 11 case allowed under § 503 (b) and entitled to priority under § 507 (a) (1) of the Bankruptcy Code.

*1.3*    ***Allowed*** shall mean, with respect to a Claim, (a) any Claim that has been listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no contrary proof of claim or interest has been filed, (b) any

properly and timely filed, liquidated, noncontingent Claim with respect to which no

objection to the allowance thereof has been filed within the applicable period fixed by the

Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Confirmation Order or a Final

Order of the Bankruptcy Court. Unless otherwise specified in the Plan or in a Final Order

allowing such Claim, "Allowed" in reference to a Claim shall not include (a) interest on the

amount of such Claim accruing from and after the Petition Date, (b) punitive or exemplary

damages, or (c) any fine, penalty, or forfeiture.

      *1.4*    ***Allowed Claim*** shall mean a claim against the Debtors to the extent:

      *a.*    A proof of claim was:

        *1.* Timely filed.
        *2.* Deemed filed pursuant to Section 1111(a) of the Bankruptcy Code; or
        *3.* Filed late with leave of the Bankruptcy Court after notice and opportunity for hearing given to the Debtor's counsel; and

      *b.*    *1.* Which is not a Disputed Claim; or
        *2.* Which is allowed (and only to the extent allowed) by a Final Order, after objection, if any, and hearing; and

      *c.*    If disputed, the creditor filed a Proof of Claim before the Claims Bar Date.

      *d.*    With respect to any Professionals seeking compensation in connection with this case, when said compensation has been allowed by Order of the Bankruptcy Court after notice and hearing as provided in the Bankruptcy Code.

      *1.5*    ***Bankruptcy Case*** shall mean this Chapter 11 Case at Bankruptcy Case

Number 17-22147-GLT

      *1.6*    ***Bankruptcy Code*** shall mean title 11 of the United States Code, 11 U.S.C.

§ 101 *et. seq.*, as amended and in effect as of the Petition Date.

*1.7*    ***Bankruptcy Court*** or ***Court*** shall mean that unit of the United States District Court for the Western District of Pennsylvania known as the United States Bankruptcy Court for the Western District of Pennsylvania located at 54th Floor, U.S. Steel Tower, 600 Grant Street, Pittsburgh, Pennsylvania 15219 or any Court having jurisdiction to hear and determine appeals there from.

*1.8*    ***Bankruptcy Rules*** shall mean (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 8 U.S.C. § 2075, and (b) the local rules of the Bankruptcy Court, in each case, as in effect on the Petition Date.

*1.9*    ***Business Day*** shall mean between 9:00 a.m. and 5:00 p.m. local Pittsburgh time on every day, except Saturdays, Sundays, and national holidays.

*1.10*    ***Claim*** shall mean the meaning set forth in §101(4) of the Bankruptcy Code.

*1.11*    ***Claim Holder*** shall mean any holder of claims in any class, as defined herein, entitled to receive a Distribution under the Plan, whether or not such Claims were Allowed Claims on the Effective Date.

*1.12*    ***Class*** shall mean the category of holders of claims or equity interests in such category as provided by 11 U.S.C. § 1122 of the Bankruptcy Code and as defined in the context of this Plan.

*1.13*    ***Closing Date*** shall mean the closing by the Debtor as to all instruments and documents required to be executed under this Plan.  The closing shall occur at 10:00 a.m. Pittsburgh time at the offices of the attorney for the plan proponent, Calaiaro Valencik,

4

938 Penn Avenue, Suite 501, Pittsburgh PA 15222-3708, on the 31st business day after the Confirmation Order becomes a Final Order.

    **1.14**    ***Collateral*** shall mean any property in which the Debtor has an interest and which secures an allowed claim.

    **1.15**    ***Confirmation Date*** shall mean the date when the Clerk of the Bankruptcy Court shall have entered the Confirmation Order on the docket.

    **1.16**    ***Confirmation Order*** shall mean the Order entered by the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1129 of the Bankruptcy Code.

    **1.17**    ***Creditor*** shall mean any person having a claim against the Debtors that arose on or before the filing date or a claim against the Debtor's estate of a kind specified in §502(g), (h), or (I) of the Bankruptcy Code.

    **1.18**    ***Disclosure Statement*** shall mean the Amended Disclosure Statement of the Debtor, dated June 30, 2022, filed with and approved by the Court pursuant to 11 U.S.C. § 1125 of the Bankruptcy Code.

    **1.19**    ***Disputed Claims*** shall mean alleged claims against the Debtors listed as disputed, contingent or unliquidated on the Debtors' schedules or amended schedules; or which a timely proof of claim is filed, and to which an objection has been timely filed within sixty (60) days after the confirmation date by a party in interest and which objection is not the subject of a Final Order or has not been withdrawn.

    **1.20**    ***Distribution Date*** shall mean; either (a) the 15th day after the Confirmation Order becomes final; for secured and priority claims; (b) the end of the quarter after the Effective Date. On this date, the first distribution will occur to undisputed, allowed

unsecured creditors.  (c) If a claim is not allowed by the prior date, the 30th business day after the date on which a disputed claim is finally adjudicated and no further appeal can be taken.

*1.21  Effective Date of the Plan* shall mean the date of the entry of the Confirmation Order, <u>provided</u> <u>that</u> the Confirmation Order is a Final Order.

*1.22  Impaired* means, with respect to any Claim, a Claim with respect to which the Plan alters the legal, equitable or contractual rights to which such Claim entitles its holder.

*1.23  Insider* shall have the same meaning as more fully defined in 11 U.S.C. § 101(31).

*1.24  Interim Financing* shall mean any loan, which is approved by the Bankruptcy Court under 11 U.S.C. § 364 and funded prior to the Effective Date.

*1.25  Filing Date* shall mean May 22, 2017, the date on **Ronald Jones** filed his chapter 7 petition for bankruptcy with the Bankruptcy Court.

*1.26  Final Order* shall mean an Order, judgment or decree of the Bankruptcy Court as to which **(a)** any appeal that has been timely taken, has been finally determined or dismissed; **(b)** the time for appeal has expired and no appeal has been timely taken in accordance with Rule 8002 of the Rules of Bankruptcy Procedure and any applicable local procedural rule; or **(c)** an appeal has been timely taken, but such Order has not been stayed by appropriate cash bond or equivalent under Rule 8005 of the Rules of Bankruptcy Procedure.

**1.27** **Fiscal Quarter** shall mean a three-month period ending on the last day of March, June, September, or December as the appropriate case may be.

**1.28** **Gender and Number** when used herein, words importing any gender may be applied to and include all persons; words importing the plural number may be applied to mean a single person or thing, and words importing the singular number may be applied to and mean more than a single person or thing.

**1.29** **General Rules of Interpretation** unless otherwise defined here, all terms used in this Plan shall have the meanings set forth in the Bankruptcy Code.

**1.30** **Litigation** shall mean actions in the United States District Court or Bankruptcy Court for the Western District of Pennsylvania with any caption including the Debtor.

**1.31** **Plan** shall mean this Second Amended Plan of Reorganization, filed on June 30, 2022, as the same may be amended or modified from time to time in accordance with the provisions of this Plan and 11 U.S.C. § 1127 of the Bankruptcy Code, all addenda, exhibits, schedules, releases and other attachments hereto, all of which are incorporated herein by reference as though fully set forth herein.

**1.32** **Priority Tax Claim** shall mean any claim entitled to priority pursuant to 11 U.S.C. § 507(a)(7) to the extent it is an allowed claim.

**1.33** **Professional** shall mean any person or entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Confirmation Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.34   Proof of Claim** shall mean any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002.

**1.35   Proponent of the Plan** or **Plan Proponent** shall mean the Debtor, Ronald Jones.

**1.36   Tax Attributes** shall mean any right or claim for creditors that the Debtor has as of the date of confirmation of the Plan.

**1.37   Schedules** shall mean the schedules of assets and liabilities filed Ronald Jones with the Bankruptcy Court as required by 11 U.S.C. § 521 of the Bankruptcy Code, and any amendments thereto as allowed by the Bankruptcy Court.

**1.38   Secured Claim** shall mean an allowed claim in respect to which a security interest is held in or against any property of the Debtors' estate, to the extent of the value of such creditor's interest in the estate's interest in such property; and to the extent the claim is perfected against a trustee under 11 U.S.C. § 544.  If the value of such creditor's interest is less than the amount of the allowed claim held by it, then such creditor shall hold an unsecured claim for the deficiency amount; if the creditor's claimed security is not perfected, it will have an unsecured claim; but only to the extent the creditor has filed a claim.

**1.39   United States Trustee** shall mean the United States Trustee appointed under 28 U.S.C. § 591 to serve in the Western District of Pennsylvania.

**1.40   Unsecured Claim** shall mean any claim other than an administrative claim; secured claim or a priority claim, to the extent it is an allowed claim; and to the extent a disputed claim has filed a timely Proof of Claim.

## ARTICLE 2 - CLASSIFICATION OF CLAIMS AND INTERESTS INTO CLASSES

**2.1**    **Class 1**, **Administrative Claims**                                    **(Unimpaired)**

**2.2**    **Class 2, Freedom Mortgage Corporation,**
       **formerly Pacific Union Mortgage**
       **1st Mortgage on** 3307 Waterford Drive Pittsburgh PA 15238 **(Impaired)**

**2.3**    **Class 3, Home Equity Line of Credit- Citizens Bank**
       **2nd Mortgage on** 3307 Waterford Drive Pittsburgh PA 15238 **(Impaired)**

**2.4**    **Class 4, Priority Tax Claims**                              **(Impaired)**

**2.5**    **Class 5, General Unsecured Creditors**                 **(Impaired)**

         **Subgroup (A) – Creditors who do not affirmatively accept a
                 discharge**
         **Subgroup (B) – Creditors who affirmatively accept a discharge**

**2.6**    **Robleto Kuruce**

## ARTICLE 3 - DESIGNATION OF CLASSES

**3.1**    **Class 1** shall consist of all **Allowed Administrative Claims**, shall consist

of fees to the United States Trustee; the Clerk of Courts and any professional fees, which

are entitled to priority under 11 U.S.C. § 507(a)(1).  These claims include the following:

         a)      Any attorney who successfully recovers any money on behalf of the

estate.  11 U.S.C. § 503(b)(3)(D);

         b)      Any loan broker who successfully obtains a loan;

         c)      Attorney for the Debtor, Calaiaro Valencik; and

         d)      Robert Shearer, Chapter 7 Trustee, shall have a stipulated claim for

$ 5,000.00 for his costs and fees that accumulated during the Chapter 7 portion of the

case. There will be no need for any fee application because this is a settled amount which

is being noticed to all creditors in this case.

9

This Class shall also include administrative expenses incurred during the administration of this bankruptcy case, including the following:

e) Any post-petition tax liability owed to the Internal Revenue Service;

f) Unpaid utility bills, if any;

g) All United States Trustee's fees and Clerk of Bankruptcy Court charges, if any; and

h) All professional fees are subject to the Bankruptcy Court's approval under Section 330(a)(1) of the Bankruptcy Code and Bankruptcy Rule 2106(a), and permitted only to the extent professionals preserved the bankruptcy estate.

**3.2** Class 2 shall consist of the secured claim of **Freedom Mortgage Corporation, formerly Pacific Union Mortgage ("Freedom Mortgage").** Freedom Mortgage, PO Box 6656, Chicago, IL 60680-6656. Freedom Mortgage holds a first mortgage on 3307 Waterford Drive, Pittsburgh, PA 15238 (the "Residence"). The monthly payment of $2,389.76 includes principal, interest, taxes and insurance.  The mortgage was originally dated May 25, 2016 and was in the face amount of $275,000.00. The mortgage was recorded on May 25, 2016 at Book 46486, Page 137. On the Petition Date, the Debtor listed the property as having a value of $330,000.00. On the Petition Date, the Debtor listed Freedom Mortgage as having a total claim in the amount of $272,000.00. The mortgage holder did not file a timely Proof of Claim. The Debtor has continued to make adequate protection payments during this case and this obligation is current. ***THIS PLAN DOES NOT SEEK TO MODIFY THE 1ST MORTGAGE OF FREEDOM MORTGAGE. Confirmation of this plan constitutes an adjudication that the mortgage is current.***

10

*Freedom Mortgage has asserted a pre-confirmation arrearage of $3,558,30. The Debtor disputes the existence of any arrearages. These arrears, to the extent they are allowed, will be paid over the 36 months following confirmation.*

    **3.3**    **Class 3** shall consist of the secured claim of **Citizens Bank**. Citizens Bank holds the Home Equity Line of Credit/ mortgage on 3307 Waterford Drive, Pittsburgh, PA 15238. This mortgage was originally dated July 25, 2016 and was in the face amount of $18,000.00. This mortgage was recorded in the Recorder's Office of Allegheny County, Pennsylvania in Book 46864, Page 576.  Petition Date, the Debtor listed Citizens Bank as having a total claim in the amount of $17,545.00. Wells Fargo did not file a timely Proof of Claim. The Debtor has not made any post petition payments during the chapter 7 case; and the mortgage is in arrears. *THIS PLAN SEEKS TO MODIFY THE MORTGAGE OF CITIZENS BANK.*

    **3.4**    **Class 4** shall consist of the **Priority Tax Claims** of various governmental units for the amounts which were due as of May 22, 2017, as follows:

**Priority Tax Claims**

| Name of Creditor | Class | Amount Owed | Status |
|---|---|---|---|
| United States of America, Internal Revenue Service POC #1 | 4 | $33,226.25 | Estimated/Disputed |

Participation in this class shall be limited to taxes which are defined as priority claims in 11 U.S.C. §§ 507(a)(7)(A), (C) and shall include principal and interest through May 22, 2017. The priority claims will participate in this class ONLY to the extent the claim has priority status. Any unsecured portion, the penalty portion of this claim, and or any non-priority claim will be paid as a Class 6 General Unsecured claim.

11

**3.5** **Class 5** shall consist of shall consist of all other **General Unsecured Creditors** who had an allowed claims against the Debtor as of **May 22, 2017**. This class is made up of General Unsecured Claims in the approximate amount of $195.571.14. Some of the Creditors' claims in this class are disputed. Participation in this class shall be limited to the amount due as of May 22, 2017 and who have filed to participate in class 5. The claims in this class shall not include any late charges, interest or attorney's fees after the Petition Date. This treatment anticipates the general order denying the discharge will not be modified. The Disclosure statement identifies those unsecured creditors would receive no distribution in a chapter 7 case. Terri Imbarlina Patak filed an adversary action at Adv. Pro No. 17-02222-GLT ("Adversary") to determine whether Ron Jones' debts were subject to discharge under Chapter 7.  The Chapter 7 Trustee filed a separate adversary to recover fraudulently-conveyed property. The adversary proceedings culminated in (1) a default judgment in favor of the Chapter 7 Trustee and (2) a determination in favor that the debt to Terri Imbarlina Patak was not subject to a discharge.  The Adversary also culminated in a determination that Debtor would be denied a general discharge.

This Plan and its treatment recognizes the non-dischargeable aspect of the Patak claim and that all creditors are protected by an order of this Court that the Debtor is not entitled to a discharge.  Factoring the non-collectability of any judgment, this Plan proposes the use of exempt social security and pension income to make payments to creditors.

This Plan creates two subgroups of Class 5 creditors. **Subgroup A** are containing all General Unsecured Creditors who do not affirmatively elect to be treated in **Subgroup**

**B**. By default, all General Unsecured Creditors, unless elected otherwise, are in
**Subgroup A.** Subgroup A creditors will be treated as follows:

      i.      Subgroup A will be paid up to $ 15,000.00[1] over five years without
interest.  This class will not be discharged from any amount which was not paid under the
plan.

      ii.      At the conclusion of the Plan Payments, the creditors in this class
may enforce any collection rights they have as to the unpaid amounts they are due.

      **Subgroup B** shall contain all General Unsecured Creditors who affirmatively elect
to accept a discharge of the unpaid portions of their claims under the Plan. Creditors in
Subgroup B will be treated as follows:

      i.      If they accept this plan treatment, the Debtor will pay the Subgroup
B creditors a minimum of $ 85,000.00[2] over 10 years without interest or $708.33 a month
for 120 months.

      ii.      These Subgroup B creditors must place on their ballot, their
acceptance to participate in Subgroup B and accept a discharge.

      iii.      The Debtor is securing the payment to Subgroup B by a mortgage in
the amount of  $ 85,000.00.

      iv.      At the completion of payments, Creditors in Subgroup B will accept

---

[1]    The Dividend to this subclass is not possible to project until the ballots accepting class 5(B) treatment have been submitted. It is possible that all creditors will elect to be members of class 5(B) and no creditors will populate class 5(A). Depending on the outcome of the ballots, any unused portion of class 5(A) dividend will be added the amounts paid to class 5(B).

[2]    It is possible that all creditors will elect to be members of class 5(B) and no creditors will populate class 5(A). Depending on the outcome of the ballots, any unused portion of class 5(A) dividend will be added the amounts paid to class 5(B) and may increase the amounts paid to class 5.

a contractual discharge of any unpaid portion of their claims.

     **3.6**    **Robleto Kuruce, PLLC**. Robleto Kuruce, PLLC has filed Proof of Claim #13

("<u>POC 13</u>") on February 14, 2022.  The Proof of Claim #13 ("<u>POC 13</u>"), asserted claim in

the amount of $14,755.16 for attorney fees alleged accrued during the period of March 4,

2019 through June 4, 2019.[3] POC 13 was later amended asserting that the claim was

entitled to priority under Section 507(a)(2) of the Bankruptcy Code.  The Debtor filed an

objection to that claim at Doc. No. 198. The Objection to that claim was resolved. The

Debtor believes that Robleto Kuruce, PLLC holds a valid; but disputed claim but it does

hold a valid post-petition, pre-conversion claim for legal fees from the Debtor. After

considering the costs of litigation and the possibility that the costs of defense and the

possible impact costs of Defense and /or the entry of a judgment will have upon this case,

the Debtor has decided that it is in everyone's best interest to resolve this disputed claim.

     The Debtor will pay Robleto Kuruce, PLLC the sum of $10,000.00.

       i.     This sum will be paid in 60 equal, monthly installments of

$166.66.

       ii.     Upon payment of all amounts due under this subsection, Robleto

Kuruce, PLLC shall waive and agree to discharge any remaining amount of its claim

against the Debtor or Grace Betancourt Jones, *provided, however,* that if the Debtor fails

to make all payments provided for under this subsection of the Plan, Robleto Kuruce,

PLLC may seek full payment of the undiscounted balance of its claim from any and all

---

[3]     These are the dates set forth in the leftmost column of the attachment to POC 13. However, it is unclear from the one-page attachment what work was allegedly done or when such work was done/completed.

obligors, in any court of competent jurisdiction.

## ARTICLE 4 - IMPAIRMENT

**THE FOLLOWING CLASSES ARE NOT IMPAIRED; THEY DO NOT VOTE:**

**Class 1** – Unimpaired          not entitled to vote upon the Plan.

**THE FOLLOWING CLASSES ARE IMPAIRED; THEY VOTE UPON THE PLAN**

**Class 2 –** Impaired          entitled to vote upon the Plan.
**Class 3 –** Impaired          entitled to vote upon the Plan
**Class 4 –** Impaired          entitled to vote upon the Plan
**Class 5** – Impaired          entitled to vote upon the Plan
**Class 6-**  Impaired          entitled to vote upon the Plan

## ARTICLE 5 - MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1**      The Plan is to be implemented by the Reorganized Debtor through his post-petition income, Social Security benefit payments and his pension. The Reorganized Debtor will continue to work at his music teaching position and will dedicate a sufficient portion of his income to fund the Plan payments in an amount of his disposable income for the next five (5) years in order to comply with 11 U.S.C. § 1129(a)(15).

**5.2**      **Escrow of Any Disputed Claim**.

**5.2.1** At the time of distribution under the Plan, the Debtor may pay into an escrow account any payment(s) for disputed creditors until such time as a final order allowing that claim is entered.

**5.2.2**   The Debtor may escrow any payment to any Creditor if there is a possible claim or setoff that may be asserted against that creditor.

**5.2.3**   The escrow account shall not bear interest. If the Creditor is fully secured, the interest earned shall be the property of the creditor; but that creditor's right

to post-confirmation interest shall be limited to the actual earned interest. If the disputed creditor is unsecured, the interest shall be the property of the estate.

**5.3** **Disbursing Agent.** The Disbursing Agent for Classes 4, 5 and 6 shall be Donald R. Calaiaro.

**5.3.1** **Property of Creditors.** Once a payment has been made by the Debtor to the Disbursing Agent, it is no longer property of the Reorganized Debtor. It shall become property of the Creditors.

**5.3.2** **Monthly Payments; Quarterly Distributions.** The Reorganized Debtor will make all payments to Classes 4, 5, and 6 on a monthly basis. All available funds for disbursement to Class 4 will be distributed on a monthly basis. All available funds for disbursement to Classes 5 and 6 will be distributed on a quarterly basis.

**5.3.3** **Compensation & Reimbursement.** The Disbursing Agent shall be entitled to compensation and reimbursement for costs as incurred on a monthly basis, but he shall be paid $260.00 per month, plus any bookkeeping fees, postage, copying, and any other actual expenses incurred in the execution of his duties.

**5.3.4** **Inquiries to Disbursing Agent.** All inquiries to the Disbursing Agent shall be made in writing to Donald R. Calaiaro at 20 Warriors Road, Pittsburgh, Pennsylvania 15205.

**5.4** **Litigation Necessary or Possible to Consummate Plan.**

(A)    Objections to Claims who were listed as Disputed and who failed to file a Proof of Claim;

(B)    Section 506 Actions against any secured creditor who had an

16

allowed Secured Claim;

 (C) Objection to the Claims of Roberto Kuruce, PLLC (filed at Doc. No. 198);

 (D) Any Chapter 5 actions;

 (E) Motions to strike claims and actions to determine the amount due to any creditor; and

 (F) The Reorganized Debtor shall have the right to bring any action to enforce this Plan at any time.  If the Debtor is successful in an action to enforce this plan, the Debtor shall be entitled to actual attorney's fees and costs incurred in the prosecution of any such action/motion.

The Post-Confirmation Debtor shall be entitled to all defenses, rights and counterclaims against any Creditor in establishing the allowed claims, arrearages, or any amount due.

 **5.6 Miscellaneous Provisions.**

 **5.6.1**  All causes of action, all avoiding powers, all choses in action of any type which were the property of the Debtor at the time of the commencement of this case shall remain the property of the Debtor under this Plan.

 **5.6.2**  The Debtor shall have the right to bring any action and to recover damages any remedies under 11 U.S.C. § 524(i) prior to the entry of their discharge, if any creditor fails to apply payments as required by this Plan.

 **5.6.3**  Upon the conversion to Chapter 11, Trustee Robert Shearer will cease his role as the Chapter 7 Trustee.  Thereafter, the US Trustee may appoint a staff

attorney to monitor this case or the case will be monitored in accordance with the normal operations and guidelines of the US Trustee.

**5.6.4**  All Orders entered in the Bankruptcy Case and All Orders entered in Adversary No. 17-2222 GLT and Adversary No. 19-2096 GLT, including, but not limited to, the denial of the discharge of claims and this Court's sanctions in the mediation process, shall remain in full force and effect despite the conversion. Notwithstanding any Order previously entered in the bankruptcy case or in 19-2096-GLT upon the completion of payments to Class 5(B), the Debtor shall be entitled to a consensual discharge of any unpaid portion of the claims held by creditors that voluntarily elected Class 5(B) treatment.

## ARTICLE 6 - PROVISIONS FOR CLAIMS AND EQUITY SECURITY INTERESTS GENERALLY

**6.1**     At the time the Confirmation Order becomes a Final Order, the Debtor and the Reorganized Debtor shall be deemed to have the benefits and effects of Code Section 1141(a) and (b).

**6.2**     The Reorganized Debtor shall be deemed to have the benefits of Code Section 1141(c) and the Debtor and the Reorganized Debtor shall be discharged upon the completion of Plan Payments and further Order of Court upon the granting of a discharge order pursuant to and released pursuant to Code Section 1141(d) (1) (A) [discharge of debts] and the rights of Classes 5 and 6 shall be terminated except as provided for in the Plan and as provided by Code Section 1141(d).

**6.3**     In the event that the claim of any Creditor is contingent, unliquidated or subject to dispute on the Confirmation Date, the Debtor or the Creditor may, in their sole discretion, request the Bankruptcy Court to estimate for the purpose of allowance under

Section 502 of the Code, as soon as practicable after the Confirmation Date, **(a)** any disputed, contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of this Chapter 11 case, and **(b)** any right to payment arising from a right to an equitable remedy for breach of performance.

Any Disputed Creditor, who has not sought the right to vote an estimated amount prior to a hearing on the confirmation, shall not be entitled to vote upon this Plan of Reorganization.

**6.4**    Any Creditor entitled to vote on the Plan but does not timely submit a ballot voting to accept or reject the Plan and does not object to confirmation of the Plan shall be deemed to have accepted the Plan.

**6.5**    **Revesting of Property of the Estate.  Upon the confirmation of this plan, the Property of the estate will revest into the Debtor in accordance with 11 U.S.C. § 1141 (b).**

**6.6**    **Post confirmation Injunction**    All entities that hold a claim against the Debtor are enjoined from taking any actions on account of any such claims, debts or liabilities:

(A)    Commencing or continuing in any manner any action or other proceedings against the Reorganized Debtor, Debtor's Estate or any property included in that estate, unless there has been a material default under the Confirmed Plan.

(B)    Enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against Reorganized Debtor, Debtor's Estate or any property included in that estate, unless there has been a material default under the

Confirmed Plan.

      (C)    Creating, perfecting or enforcing any lien or encumbrance against the Reorganized Debtor, Debtor's Estate or any property included in that estate, unless there has been a material default under the Confirmed Plan.

      (D)    Taking any action which is inconsistent with the Confirmed Plan.

**ARTICLE 7 - TREATMENT UNDER THE PLAN
AND PROVISION FOR PAYMENT**

    **7.1**    **Class 1 – Administrative Claims**. The Class 1 claims, to the extent they are allowed administrative priority claims, shall be paid their principal claim in full without interest on or before the Plan Effective Date by a cash payment to the holder of such claim, except as provided below or as otherwise agreed by each member of the class of persons in this class. Professional persons in Class 1 whose claims have been finally approved and allowed by the Court pursuant to Section 330 and 503 of the Bankruptcy Code shall be paid on the closing date the amount in cash that has been agreed to by the individual professional persons. The following claims <u>arising after the filing date</u> and related to the ongoing business expenses of the Debtor shall be paid by the Reorganized Debtor or any successor according to the stated payment terms of such liability: (a) all allowed accounts payable, (b) all executory contracts, unexpired leases.

    **7.2**    **Class 2 – Freedom Mortgage.**  The Class 2 claim of Freedom Mortgage, which holds a first mortgage lien on 3307 Waterford Drive, Pittsburgh, PA 15238. This Claim is not impaired and not entitled to vote.  The Class 2 claim of Freedom Mortgage will be paid in full according to the terms of the mortgage and note. The terms of this mortgage shall be retained under this Plan. The lien will be retained pursuant to this Plan

until the mortgage obligation is paid in full.

**7.2.1**   The Debtor has asserted that the mortgage is current. The Debtor and the Creditors are relying on this as part of the consideration of this Plan and that there are no arrearages under the mortgage. ***The Confirmation of this Plan shall constitute an adjudication that the mortgage is current according to the mortgage and the note and that there are no arrears, unless any alleged arrearage are asserted or raised prior to confirmation.***

***Freedom Mortgage asserted pre-confirmation arrears of approximately $3,558.30.  This amount is <u>DISPUTED</u>.  The Debtor tendered a payment of all arrears, and he believes the mortgage is current.  To the extent there are any arrears, the arrearages will be cured within 12 months of confirmation. The Debtor will pay 1/12th of the allowed arrears to the creditor on or before the 20th of each month.***

**7.2.3**   The mortgagee will forbear from declaring any default or exercising any remedies under its mortgage for as long as the Debtor complies with this plan.

**7.2.4**   The creditor in this Class must give notice to the Debtor and its counsel by written notice specifying the alleged default and the action needed to cure the default. The Debtor shall have thirty (30) days to cure any default after receipt of that notice. No creditor may enforce any right or enforce any lien until this notice and opportunity to cure has been given. All notices of default must be mailed to the Debtor at 3307 Waterford Drive, Pittsburgh, PA 15238 **AND** a copy of that notice shall be mailed to Donald R. Calaiaro at 938 Penn Avenue, Suite 501, Pittsburgh, Pennsylvania 15222, with

courtesy copies made to Donald Calaiaro at dcalaiaro@c-vlaw.com. All notices must be sent by certified mail, return receipt requested to be effective. The terms of these notice rights must be strictly enforced as a condition precedent to the exercise of any rights under this Plan.

      **7.3**  **Class 3, Citizens Bank.** The Class 3 claim of Citizens Bank shall be treated pursuant to the provisions of the Section 1129(b)(2)(A) as follows:

(A)   Citizens Bank will realize the indubitable equivalent of its allowed claim on the date of distribution as provided in the Plan;

(B)   Citizens Bank will receive treatment of its claim in a manner consistent with the Bankruptcy Code:

    (1) It will receive its unpaid principal, interest, costs and fees as allowed by the Bankruptcy Code, to the extent it is an allowed claim after modification and deduction for all credits;

    (2)  It is **IMPAIRED** under this Plan

(C)   Citizens Bank has a second mortgage lien; such lien will be retained under this Plan, as to the Reorganized Debtor, and will be retained, as modified by this Plan.

(D)   The Mortgage Debt will be modified and restructured under this Plan.

(E)   The Balance due will be reamortized by the Debtor over 10 years.

(F)   The modified secured claim will accrue post-confirmation interest at 3.5 % simple interest per annum for the life of the mortgage.

(G)   The term will be reset to a new term of 10 years.

(H)   All prepayment penalties will be stricken as a term of the loan.

(I)   The first payment will be made on the Plan Effective Date. The Plan payment is estimated to be $ 187.80 per month. The Debtor will make 119 subsequent payments on the monthly anniversary of the Plan Effective Date.

(J)   The Debtor and the Lender will document this modification by executing a

loan modification agreement, which will be recorded. The failure of the lender to document this modification does not affect the enforceability of this Plan or the modification under this Plan

(K)   After confirmation, this debt shall be an in-rem obligation only and the Debtor shall have no continuing liability on the note.

The creditor in this Class must give notice to the Debtor and its counsel by written notice specifying the alleged default and the action needed to cure the default. The Debtor shall have thirty (30) days to cure any default after receipt of that notice. No creditor may enforce any right or enforce any lien until this notice and opportunity to cure has been given. All notices of default must be mailed to the Debtor at 3307 Waterford Drive, Pittsburgh, PA 15238 **AND** a copy of that notice shall be mailed to Donald R. Calaiaro at 938 Penn Avenue, Suite 501, Pittsburgh, Pennsylvania 15222, with courtesy copies made to Donald Calaiaro at dcalaiaro@c-vlaw.com. All notices must be sent by certified mail, return receipt requested to be effective. The terms of these notice rights must be strictly enforced as a condition precedent to the exercise of any rights under this Plan.

**7.4    Class 4 Priority Tax Claimants**. The Class 4 Claims will be treated as follows:  Pursuant to section 1129(a)(9)(C), the Class 4 claims, to the extent they are allowed priority claims, shall be paid 100% of the principal and pre-bankruptcy priority claims. The Class 4 claims do not include any penalty nor do they include any pre-confirmation interest. The priority portion of the claim will be paid over sixty (60) months in sixty (60) equal payments plus statutory post-confirmation interest until these claims are paid in full. The Class 4 claimants may file new liens to secure any amounts due under this Plan for which there are no existing liens. The Class 4 claims do not include any penalty nor do they include any pre- confirmation interest.

23

All creditors in this Class must give notice to the Debtor and its counsel by written notice specifying the alleged default and the action needed to cure the default. The Debtor shall have thirty (30) days to cure any default after receipt of that notice. No creditor may enforce any right or enforce any lien until this notice and opportunity to cure has been given. All notices of default must be mailed to the Debtor at 3307 Waterford Drive, Pittsburgh, PA 15238 **AND** a copy of that notice shall be mailed to Donald R. Calaiaro at 938 Penn Avenue, Suite 501, Pittsburgh, Pennsylvania 15222, with courtesy copies made to Donald Calaiaro at dcalaiaro@c-vlaw.com. All notices must be sent by certified mail, return receipt requested to be effective. The terms of these notice rights must be strictly enforced as a condition precedent to the exercise of any rights under this Plan.

**7.5**   **Class 5 – General Unsecured Creditors.**   This Plan and its treatment recognizes the non-dischargeable aspect of the Patak claim and that all creditors are protected by an Order of this Court that the Debtor is not entitled to a discharge  Factoring the non-collectability of any judgment, this Plan proposes the use of exempt social security and pension income to make payments to creditors. The treatment to this Class 5 will be divided into two sub-groups.

**Subgroup A** contains all General Unsecured Creditors who do not affirmatively elect to be treated in **Subgroup B**. By default, all General Unsecured Creditors, unless elected otherwise, are in **Subgroup A.** Subgroup A creditors will be treated as follows:

i.   Subgroup A will be paid up to $ 15,000.00[4] over five years without

---

4   The Dividend to this class is not possible to project until the ballots accepting class 5 treatment

interest.  This class will not be discharged from any amount which was not paid under the plan.

     ii.     At the conclusion of the Plan Payments, the creditors in this class may enforce any collection rights they have as to the unpaid amounts they are due.

     **Subgroup B** shall contain all General Unsecured Creditors who affirmatively elect to accept a discharge of the unpaid portions of their claims under the Plan. Creditors in Subgroup B will be treated as follows:

     i. If they accept this plan treatment, the Debtor will pay the Subgroup B creditors a minimum of $ 85,000.00[5] over 10 years without interest or $708.33 a month for 120 months.

     ii.     These Subgroup B creditors must place on their ballot, they acceptance to participate in Subgroup B and accept a discharge.

     iii.     The Debtor is securing the payment to Subgroup B by a mortgage in the amount of  $ 85,000.00.

     iv.     At the completion of payments, Creditors in Subgroup B will accept a contractual discharge of any unpaid portion of their claims.

     v.     Sam Grego will  be designated as the nominee for this mortgage.

     vi.     Upon payment of this $85,000.00, Sam Grego will promptly

---

have been submitted. It is possible that all creditors will elect to be members of class 5(B) and no creditors will populate class 5(A). Depending on the outcome of the ballots, any unused portion of class 5(A) dividend will be added the amounts paid to class 5(B).

5     It is possible that all creditors will elect to be members of class 5(B) and no creditors will populate class 5(A). Depending on the outcome of the ballots, any unused portion of class 5(A) dividend will be added the amounts paid to class 5(B) and may increase the amounts paid to class 5(B).

discharge and satisfy the mortgage.

**Remedies Upon Default**   There will be a modified default provision. If there is an arrearage of more than 30 days, the Class 5(B) Creditor will issue a default notice to Ronald Jones by regular mail and email to ronaldsjones3307@gmail.com and Dcalaiaro@c-vlaw.com.   Thereafter, the Joneses' will have 15 days to cure the default from the date of the notice.  If the default is not cured, a material default has occurred.

If a material default occurs, the Nominee, Sam Grego can commence a foreclosure action; but the Joneses' may still cure at any time allowed by law.  After the material default, the interest rate permanently increases to 6% regardless of any cure.

Upon the occurrence of any material default, Sam Grego shall be entitled to collect all post- default attorney's fees and costs. For the avoidance of doubt, Sam Grego shall act on behalf of all creditors in Class 5(B).

If the Jones cure any material default, a condition of the cure is that he must to pay all post- default attorney's fees and costs.

7.5.1   **Prepayment Penalty** There shall be no prepayment penalty. The Debtor may prepay this obligation in 5(A) or 5(B) at any time.

7.5.3   **Voting as one Class.**   The Creditors in class 5 shall vote as one class.

7.5.4   **State Court Action**. Upon the completion of all payments under the Plan, and if Terri Imbarlina Patak participates in Subgroup B, Terri Imbarlina Patak will settle, discontinue and satisfy the judgment(s) against the Debtor and/or Grace Betancourt Jones. Should Debtor default, this portion shall also be non-dischargeable as

to Ronald Jones. If Terri Imbarlina Patak does not participate in Subgroup B, the Debtor may file an action seeking the protections of 11 U.S.C. § 522(f) prior to the entry of a final decree.

      **7.5.5  Counsel Fees**    Counsel to Terri Imbarlina Patak and Special Counsel to the chapter 7 Trustee may be entitled to counsel fees. As part of this Plan, her counsel fees will be paid by Terri Imbarlina Patak and she waives any additional claim against the Debtor or his spouse.

      **7.6    Robleto Kuruce, PLLC**. Robleto Kuruce, PLLC has filed Proof of Claim #13 ("POC 13") on February 14, 2022.  The Proof of Claim #13 ("POC 13"), asserted claim in the amount of $14,755.16 for attorney fees alleged accrued during the period of March 4, 2019 through June 4, 2019.[6] POC 13 was later amended asserting that the claim was entitled to priority under Section 507(a)(2) of the Bankruptcy Code.  The Debtor filed an objection to that claim at Doc. No. 198. The Objection to that claim was resolved. The Debtor believes that Robleto Kuruce, PLLC holds a valid; but disputed claim but it does hold a valid post-petition, pre-conversion claim for fees from the Debtor. After considering the costs of litigation and the possibility that the costs of defense and the possible impact costs of Defense and /or the entry of a judgment will have upon this case, The Debtor has decided that it is in everyone's best interest to resolve this disputed claim.

      **7.6.1  Treatment** The Debtor will pay Robleto Kuruce, PLLC the sum of $ 10,000.00.  The first payment shall be made within 30 days after the confirmation of the

---

[6]     These are the dates set forth in the leftmost column of the attachment to POC 13. However, it is unclear from the one-page attachment what work was allegedly done or when such work was done/completed.

Plan and each month thereafter until the 60 payments have been made.

      a.     this sum will be paid in 60 equal installments of $166.66.

      b.     Upon Completion of the payments of the $10,000.00, Robleto Kuruce, PLLC will waive and agree to discharge any remaining claim they have against the Debtor or Grace Betancourt- Jones.

      c.     This Plan treatment will not prejudice the rights of either the Debtor to assert this rights/ claims, in the event of a default.

      d.     In the event of a material default, Robleto Kuruce, PLLC my assert its claim.

      e.     The Debtor reserves its defenses if there is a material default.

      f.     The Debtor agrees and stipulates to a tolling of any statute of limitations for the period(s) the Debtor make his payments under the plan. the Tolling of any statute of limitations will not accrue any time until 30 days after the declaration of a material default.

      g.     Robleto Kuruce, PLLC will agree to forebear from the enforcement of any of its claims against Grace Betancourt-Jones while the Debtor make his payments under the plan.

      **7.6.2** <u>**Remedies Upon Default**</u>  There will be a modified default provision. If there is an arrearage of more than 30 days, the Creditor will issue a default notice to Ronald Jones by regular mail and email to <u>ronaldsjones3307@gmail.com</u> and <u>Dcalaiaro@c-vlaw.com</u>.  Thereafter, the Jones will have 15 days to cure the default from the date of the notice.  If the default is not cured, a material default has occurred.

a.      If Jones cures any material default, a condition of the cure is that he shall pay all post- default attorney's fees and costs of any creditor who has properly declared a default.

## ARTICLE 8 - RETENTION OF JURISDICTION

**8.1**    The Bankruptcy Court shall, after the Confirmation Date and until final consummation be entitled to exercise exclusive jurisdiction over the following matters:

a)     To consider any modification of this Plan pursuant to Section 1127 of the Code;

b)     To determine the allowance of all claims against the Debtor pursuant to Section 502 of the Code;

c)     To hear and determine any objections filed within thirty (30) days after confirmation date to the allowance of any claim;

d)     To hear and determine any adversary proceeding or contested matter, controversy, suit or dispute over which the Bankruptcy Court has jurisdiction under 28 U.S.C. §§ 157, 1334;

e)     To hear and determine all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of the Plan;

f)     To issue such orders as may be necessary for the administration and/or consummation of this Plan, including complaints to determine secured claims;

g)     To set and determine all professional fees and other costs of administration in this Chapter 11 case;

h)     To such other purposes as may be set forth in the Confirmation Order;

i)     To hear and adjudicate any request for re-conversion to a chapter 7 bankruptcy;

j)     To enter such Orders as are necessary and appropriate under the Bankruptcy Code.

k)     To set and determine all professional fees and other costs of administration in this Chapter 11 case;

## ARTICLE 9 - GENERAL PROVISIONS

**9.1**    Amendments: This Plan may be amended by the Plan Proponent at any time prior to the Confirmation Date and thereafter as provided in Section 1127 of the Bankruptcy Code.

29

**9.2**    Headings: The headings included in this Plan are for the sake of convenience and reference only and shall not constitute part of this Plan for any other purpose.

**9.3**    Interest: Except as specifically set forth in the Plan or in any Final Order of the Court entered during this Chapter 11 case, interest shall be deemed not to have accrued with respect to any claim since the filing date and no payment of interest will be made pursuant to the Plan. Interest shall continue to accrue for classes 2 through 6 until paid in full.

**9.4**    This Plan contemplates that the case will be closed and a final decree entered as soon as all of the following have occurred:

a)    All fee applications have been filed and approved.   No fee application shall be allowed unless they have been filed prior to forty-five (45) days after the Order of Confirmation is entered;

b)    All objections to claims and adversary actions are filed and resolved;

c)    The Debtor has made the first payment to the administrative claimants; and

d)    The Debtor has complied with the Post-Confirmation Order;

e)    The Debtor has made all payments required under the Plan as of that date.

**9.5**    The rights of Class 6 to payments under this Plan by the Plan Proponent will be an unsecured obligation of the Reorganized Debtor.

## ARTICLE 10 - AMENDMENT

The Proponent of the Plan reserves the right to amend this Plan prior to

confirmation.  If there is a substantial event that alters the feasibility of this Plan or if the

Plan fails to meet the requirements of 11 U.S.C. § 1122 or if this Plan is not confirmed.

**Respectfully submitted,**

**Dated:** June 30, 2022                                         **BY:**    /s/ Donald R. Calaiaro
                                                                 **Donald R. Calaiaro, Esquire**
                                                                 **PA I.D. #27538**
                                                                 **dcalaiaro@c-vlaw.com**
                                                                 **CALAIARO VALENCIK**
                                                                 **938 Penn Avenue, Suite 501**
                                                                 **Pittsburgh, PA  15222-3708**
                                                                 **(412) 232-0930**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | ) **Case No.** 17-22147-GLT |
| | ) |
| Ronald S. Jones, | ) **Chapter** 11 |
| | ) |
| **Debtor.** | ) **Document No.** |

**CERTIFICATE OF SERVICE OF**
**SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
**DATED JUNE 30, 2022**

I certify under penalty of perjury that I served the above captioned pleading on the parties at the addresses specified below or on the attached list on June 30, 2022.

**Service by E-mail**:
Ronald S. Jones ronaldsjones3307@gmail.com and gbgracebetancourtr@gmail.com

**Service by NEF**:
Jodi Hause, on Behalf of the United States Trustee by on behalf of U.S. Trustee Office of the United States Trustee; jodi.hause@usdoj.gov, David.A.Berry@usdoj.GOV;Steven.W.Albright@usdoj.GOV
Robert Shearer on behalf of Trustee Robert Shearer; information@robertshearer.com, rshearer@ecf.axosfs.com;rspclaw@gmail.com
Samuel R. Grego on behalf of Spec. Counsel Samuel R. Grego; gregos@dmclaw.com, rmccartney@dmclaw.com

The type(s) of service made on the parties (first-class mail, electronic notification, hand delivery, or another type of service) was:  Electronic Notification.

If more than one method of service was employed, this certificate of service groups the parties by the type of service. For example, the names and addresses of parties served by electronic notice will be listed under the heading "Service by Electronic Notification," and those served by mail will be listed under the heading "Service by First-Class Mail."

**Executed on:**  June 30, 2022

/s/ Donald R. Calaiaro
**Donald R. Calaiaro, Esquire**
**PA I.D. #27538**
**dcalaiaro@c-vlaw.com**
**CALAIARO VALENCIK**
**938 Penn Avenue, Suite 501**
**Pittsburgh, PA  15222-3708**
**(412) 232-0930**